IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| WILL JONES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:19-cv-01016-STA-jay |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Will Jones has filed a *pro se* motion to vacate, set aside, or correct his sentence (the "Petition"). (ECF No. 1.)¹ For the following reasons, the Petition is **DENIED**.

**BACKGROUND**

In July 2017, a federal grand jury for the Western District of Tennessee returned an indictment charging Jones with one count of distributing, attempting to distribute, possessing with intent to distribute, and attempting to possess with intent to distribute 5 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and two counts of the same offense involving drug quantities of 50 grams or more (Counts 2 and 3). (*United States v. Jones*, No. 1:17-cr-10068-STA-1, ECF No. 3 (W.D. Tenn.).) The Federal Public Defender was appointed to represent the Defendant. (*Id.*, ECF No. 8.)

---

¹ Record citations are to documents filed in the present case, unless otherwise noted.

Assistant Federal Public Defender Bruce Griffey, who represented Jones through the discovery process, filed a Rule 16 discovery request on August 1, 2017. (ECF No. 15.) The Government responded to the request a month later. (ECF No. 22.)

Assistant Federal Public Defender Christina Wimbley represented Jones during plea negotiations, and she secured a plea agreement on his behalf. (ECF No. 33.) On January 29, 2018, the Defendant pleaded guilty to Count 2 of the indictment. (ECF No. 32.)

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). The PSR calculated a base offense level of 32 pursuant to § 2D1.1 of the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). (PSR at 6.) That Guideline section provides that an offense involving at least 150 grams but less than 500 grams of methamphetamine has a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4). The PSR advised that the Defendant was a career offender because the offense to which he pleaded guilty was committed subsequent to his sustaining at least two felony convictions for controlled substance offenses. (*Id.* (citing U.S.S.G. § 4B1.1(b)(1).) His offense level was therefore increased by five points. Three points were deducted for his acceptance of responsibility. (*Id.*) Based upon a total offense level of 34 and a criminal history category of VI, the Guideline imprisonment range was calculated to be 262 to 327 months. (*Id.*, Sentencing Recommendation at 2.)

Jones was represented by Assistant Federal Public Defender LaRonda Martin during the sentencing phase. On April 26, 2018, Martin filed a 16-page sentencing memorandum arguing for "imposition of a downward variance and a reasonable sentence[.]" (ECF No. 37 at 15 (initial capitalization omitted).)

A sentencing hearing was held on May 14, 2018. The undersigned found that the Defendant was a career offender and applied a three-level reduction for his acceptance of responsibility. The Court found that the resulting "Guideline imprisonment range [was] 262 to 327 months." (*Id.*, ECF No. 48 at 10.) The Government informed the Court that it was not seeking an enhanced sentence under 21 U.S.C. § 851, which would have called for a life sentence. Instead, the prosecutor argued for a "guideline sentence." (*Id.*, ECF No. 48 at 12.) Defense counsel asked the Court to impose a 150-month sentence. (*Id.*, ECF No. 48 at 12-23.) Upon consideration of the advisory range and the sentencing factors set forth in 18 U.S.C. § 3553(a), the undersigned imposed a sentence on Count 2 of the indictment of 220 months' incarceration, which was 42 months below the bottom of the Guidelines range. The sentence also included five years of supervised release. The Government moved to dismiss the remaining counts, which the Court granted. No direct appeal was taken.

## DISCUSSION

Jones filed the Petition on January 24, 2019, and he signed it under penalty of perjury. He alleges that he "was never given documents of Discovery Request/Response" by Griffey and Wimbley. (ECF No. 1 at 4.) He asserts that the alleged failure of his attorneys to provide him with discovery materials amounted to ineffective assistance (Claim 1). Regarding his third attorney, Laronda Martin, Petitioner maintains that she rendered ineffective assistance by not being prepared and failing to present mitigating factors at sentencing (Claim 2). Jones further asserts that his Fourth Amendment right against unreasonable search and seizure was violated during the search of his garage (Claim 3), that the plea agreement was ambiguous (Claim 4A) and counsel

was ineffective regarding the agreement (Claim 4B), and that the indictment contained errors (Claim 5).[2]

On May 20, 2019, Respondent United States of America filed an answer to the Petition and affidavits from Wimbley and Martin. (ECF No. 13, 13-1, 13-2.) The Government argues that the claims are, variously, waived by Jones's guilty plea, procedurally defaulted, non-cognizable on collateral review, and meritless. Petitioner submitted a reply, insisting that he is entitled to relief.[3] (ECF No. 16.)

## I. Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record,

---

[2] The Court has renumbered the claims for ease of discussion.

[3] In his reply, Petitioner asserts numerous additional ineffective-assistance claims that were not raised in the Petition. (*See* ECF No. 16 at 8, 12, 15-16.) After briefing was completed, Jones filed without leave of Court two documents styled "Supplemental Brief(s)." (ECF No. 17, 21.) The first supplemental brief asserts a new claim challenging Petitioner's sentence on the ground that he should have received a lighter punishment because he is a non-violent offender. Because Jones presented new claims in the reply and in his first supplemental brief without seeking leave of Court to amend the Petition, the claims are not properly before the Court and will not be addressed. The second supplemental brief presents additional arguments in support of the erroneous-indictment claim. Although those arguments were not presented in the reply, the Court has considered them.

inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Proceedings under § 2255 are not a substitute for direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Therefore, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice'' to excuse the procedural default. *Id.* A petitioner may also seek to overcome the default on the ground "that he is 'actually innocent'" of the crime of conviction. *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude that is cognizable under § 2255. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome

5

the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

## II. Claim 1

Petitioner asserts that Griffey and Wimbley failed to provide him with discovery materials. He posits that their alleged conduct amounted to ineffective assistance. Respondent maintains that Petitioner waived the claim when he pleaded guilty and that the claim is otherwise without merit. The Government's arguments are well-taken.

### A. Waiver

A knowing and voluntary guilty plea waives non-jurisdictional defects in the proceedings. *Tollett v. Henderson*, 411 U.S. 258 (1973). That is so because "a guilty plea represents a break in

6

the chain of events which has preceded it in the criminal process." *Id.* "[A] claim of ineffective assistance of counsel that does not relate to the validity of the plea" is among the constitutional claims waived. *White v. Skipper*, No. 1:18-CV-384, 2018 WL 1989982, at *7 (W.D. Mich. Apr. 27, 2018), *appeal dismissed*, No. 18-1696, 2018 WL 6720013, at *2 (6th Cir. Aug. 6, 2018) (citing *United States v. Stiger*, 20 F. App'x. 307, 308–09 (6th Cir. 2001) (concluding that pre-plea ineffective-assistance-of-counsel-claims were waived by the defendant's guilty plea); *see also Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. July 15, 2016) ("Claims of pre-plea ineffective assistance not relating to the acceptance of the plea are waived under the... *Tollett* rule.")).

As discussed, Jones entered a plea of guilty to one count of the indictment. He therefore waived his claim that his attorneys were ineffective regarding discovery during the pre-plea stage. *See Reed v. Braman*, No. 4:17-CV-12318, 2019 WL 3842895, at *5 (E.D. Mich. Aug. 15, 2019) (holding, pursuant to *Tollett*, that "Petitioner's claim that counsel was ineffective for failing to conduct discovery or take other action during the pre-trial period is foreclosed by his plea and does not warrant relief").[4]

### B. Merits

An assessment of the merits of Claim 1 shows that, even if the claim was not waived, it would be denied. It bears noting that a factual dispute exists regarding the performance of Petitioner's attorneys at the discovery stage. More to the point, Jones's verified allegation that his attorneys did not provide him with discovery is contrary to Wimbley's averment that she reviewed

---

[4] Even if Jones had argued that there was no waiver because his guilty plea was not voluntary, the argument would be rejected. For the reasons discussed *infra*, Petitioner knowingly and voluntarily pleaded guilty.

7

the discovery material with him "on numerous occasions." (ECF No. 13-1 at 1.) Resolution of that factual dispute is not necessary, however, because Jones has not alleged how he was prejudiced by counsel's conduct.[5] The Petition itself contains no allegations regarding prejudice. As for the reply, it at least broaches the subject but offers only conclusory assertions, to wit:

> Clearly the defense counsel's . . . unprofessional errors resulted in a much different outcome had the defendant . . . not been subject[ed] and prejudiced by his counsel's performance. The outcome for the defendant would have been substantially different had he had the true effectiveness of counsel for his criminal prosecution.

(ECF No. 16 at 9.) On this basis alone, Petitioner has failed to establish the merits of Claim 1.

It may be that Jones means to suggest that the alleged deficient conduct prejudiced him by inducing an involuntary guilty plea. If that is his intent, he still cannot prevail because the record belies any suggestion that he did not knowingly and voluntarily plead guilty.

"A guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial ... and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467, 469 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614, 618-19 (1998)).

---

[5] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

8

At the start of the change of plea hearing, the undersigned told Jones "[i]f I ask you anything that's not clear or that [you] would like for me to repeat, you let me know. Will you do that?" (No. 1:17-cr-10068-STA-1, ECF No. 53 at 5.) Jones responded "Yes, sir." (*Id.*, ECF No. 53 at 6.) He also stated that he understood that he should speak with his attorney before he answered the Court's questions if he felt he needed to. He confirmed that he "had an opportunity to discuss [his] case fully and completely with" counsel and that he was satisfied with counsel's representation (*Id.*, ECF No. 53 at 8.) The prosecutor read the count of the indictment to which the Defendant was pleading guilty and the potential penalties. After Jones asked for clarification, the undersigned provided it and Jones confirmed that he understood. He was advised of the criminal trial rights he was giving up and he stated that he understood. After the prosecutor summarized the plea agreement, the Court asked the Defendant if he understood and agreed to its terms, and he acknowledged that he did. He denied that anyone threatened or forced him to plead guilty. Jones affirmed that he was pleading guilty because he was "in fact, guilty of" the offenses. (*Id.*, ECF No. 53 at 27.) The undersigned therefore found that the Defendant "understands his rights and that he is willingly and knowingly waiv[ing] those rights." (*Id.*, ECF No. 53 at 27.) Later, in preparation for sentencing, Jones supplied a statement accepting responsibility for his crime and declaring that he "voluntarily entered a plea of guilty to th[e] offense." (*Id.*, ECF No. 48 at 9.)

Petitioner's in-court "representations . . . constitute a formidable barrier" to § 2255 relief. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Craig v. United States*, No. 2:04-cr-78, 2011 WL 864359, at *6 (E.D. Tenn. Mar. 10, 2011) ("[T]he transcript of the change of plea hearing confirms the knowing and voluntary nature of the waiver."), *aff'd* 513 F. App'x 487 (6th Cir.

9

2013). Jones has not overcome his sworn statements that he understood the terms of the plea agreement, the many constitutional rights he was waiving, and the key elements of the offenses to which he was pleading guilty.

Because his guilty plea was knowing and voluntary, Petitioner has not established prejudice flowing from his attorneys' alleged failure to review the discovery materials with him. The claim is therefore without merit.

For these reasons, Claim 1 is **DISMISSED** as having been waived by the guilty plea and is otherwise devoid of merit.

### III.   Claim 2

Regarding his attorney at the sentencing stage, Petitioner maintains that she was ineffective because she "was not properly prepared" and did not present "mitigating factors." (ECF No. 1 at 4.) He insists that counsel did not inform the Court that he had "drug or alcohol dependency," "lacked youthful guidance," suffered from unspecified "mental and emotional conditions," and lost parents at a young age. (ECF No. 16 at 18.) Respondent argues that the claim is belied by the record in Jones's criminal case. The Court agrees.

As mentioned herein, counsel filed a 16-page sentencing memorandum arguing for a sentence below the Guidelines range. The well-written memorandum discussed numerous mitigating factors, including Petitioner's loss of his mother and brother early in his life, his teenage alcohol and drug use resulting from these losses and from the lack of guidance from his father or a father figure, his steady employment as an adult, and the fact that he provided for his children. Attached to the memorandum were several exhibits supporting the existence of the mitigating factors. At sentencing, counsel expanded on numerous of the mitigating factors and read and

summarized letters from Jones's coworkers, neighbor, friends, and family members. She cited to the Court several published decisions that supported her argument for a below-Guidelines sentence. In all, her oral argument was extensive, filling eleven pages of the sentencing hearing transcript. Petitioner's allegations that counsel was unprepared for sentencing and that she did not present mitigating factors are wholly contradicted by the record.

The record also shows that Petitioner suffered no prejudice, as counsel's efforts resulted in a sentence well below the bottom of the Guidelines range. Claim 2 is therefore without merit and is **DENIED**.

IV. Claim 3

Petitioner asserts that his Fourth Amendment right against unreasonable search and seizure was violated during his arrest and the search of his garage. He maintains that the arrest and search warrants were not supported by probable cause and that the search warrant also "fail[ed] to meet . . . particularly requirements." (ECF No. 16 at 12.)

It is well settled that a "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under . . . § 2255[.]" *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (relying on *Stone v. Powell*, 428 U.S. 465 (1976)). Claim 3 is therefore non-cognizable and must be dismissed.

The claim is not properly before the Court for a second reason. As discussed *supra*, non-jurisdictional deprivations of constitutional rights that occur prior to the entry of a guilty plea are waived. *See Tollett*, 411 U.S. at 267. "A Fourth Amendment violation . . . is a non-jurisdictional defect that is waived pursuant to a valid guilty plea." *Blake v. United States*, No. 20-6370, 2021 WL 6098423, at *4 (6th Cir. June 17, 2021) (unpublished) (citing *United States v. Martinez-*

11

*Orozco*, 52 F. App'x 790, 792 (6th Cir. 2002) and *United States v. Rogers*, 387 F.3d 925, 933-34 (7th Cir. 2004)). Jones therefore waived Claim 3 when he pleaded guilty.

But even if the claim were properly before the Court, Petitioner would not be entitled to relief. Petitioner's allegations that the warrants were not supported by probable cause and that the search warrant was defective for lack of particularity are conclusory. He does not offer specific factual allegations to support these general assertions. Therefore, he has not met his burden of establishing that his Fourth Amendment rights were violated.[6]

For all of these reasons, Claim 3 is **DISMISSED**.

## V.      Claim 4

In Claim 4A, Jones asserts that the plea agreement was "vague" and "ambiguous," and that the Government "enhance[d] punishment after the agreement." (ECF No. 1 at 7.) He clarifies in his reply that he believes the plea agreement was ambiguous because it should have, but did not, reflect the parties' agreement that he "be sentenced to the lowest number in the applicable Guideline range." (ECF No. 16 at 19.) He alleges that the ambiguity in the agreement allowed the Government to "use[] [his] prior convictions, criminal history, 'relevant conduct' (inclusive of dismissed counts) in which to enhance punishment after the agreement." (*Id.* at 17.) In Claim 4B, Petitioner posits that counsel was ineffective for "lead[ing] [him] into signing [the] plea

---

[6] Under the umbrella of his Fourth Amendment claim, Petitioner also alleges that his "[p]roperty was damaged due to search and failure to relinquish items back to [him] upon comp[l]etion of investigation or closure of case." (ECF No. 1 at 5.) Even if the Petition was a proper procedural device for seeking the return of items seized, Jones agreed in the plea agreement "to abandon any civil or administrative forfeiture proceeding as a result of the conduct to which [he] is pleading under this agreement, and agrees to forfeit any and all property seized from [him] upon arrest." (No. 1:17-cr-10068-STA-1, ECF No. 33 at 1-2.)

12

agreement" and for "fail[ing] to assure the promises made to acquire the signature for the plea agreement were kept." (ECF No. 16 at 17-18.)  Respondent argues that the claims are without merit because the plea agreement was not ambiguous and the Government did not breach its terms.[7]

Courts "treat plea agreements like contracts." *United States v. Warren*, 8 F.4th 444, 448 (6th Cir. 2021)(citing *United States v. Ligon*, 937 F.3d 714, 718 (6th Cir. 2019)).  Accordingly, they are to "use 'traditional principles of contract law' to interpret them, and [they must] enforce them according to their literal terms." *Id.* (quoting *Ligon*, 937 F.3d at 718)).  Ambiguities in a plea agreement are construed against the government and prosecutors are held to "meticulous standards of performance." *Id.* (quoting *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007)).

The plea agreement in Jones's case was not ambiguous.  The document required the Government to do two things: move for dismissal of the remaining counts of the indictment and recommend that Jones receive a full reduction for acceptance of responsibility.  The agreement also contained a stipulation by both parties as to the drug quantity.  In the document's last paragraph, the parties agreed that "[t]here are no other agreements between and among" them. (No. 1:17-cr-10068-STA-1, ECF No. 33 at 3.)  Nothing in the plea agreement specified a minimum or maximum sentence, contemplated that Petitioner would not be subject to any sentencing enhancements under the Guidelines, or required the United States to seek a sentence below the applicable Guidelines range.

---

[7] Respondent also argues that Claim 4A is non-cognizable and procedurally defaulted for Jones's failure to raise it on appeal.  Petitioner asserts that he did not pursue an appeal because counsel did not tell him that he could appeal.  Because the claim is without merit, the Court declines to address the Government's alternative arguments.

Additionally, the United States did not breach the agreement. As promised, the prosecutor recommended to the Court at the sentencing hearing a full reduction of Petitioner's offense level for his acceptance of responsibility and moved to dismiss the remaining counts. The Court accepted the prosecutor's recommendation and also granted the motion to dismiss. And, because the agreement was silent as to the career-offender enhancement, the Government did not breach the agreement when it concurred in the PSR's application of that provision. Claim 4A is therefore without merit and is **DENIED**.

Claim 4B, which posits that counsel was ineffective for advising Petitioner to enter an ambiguous plea agreement and for failing to object to the Government's alleged breach of the agreement is also unsupportable. Because the plea agreement's terms were not ambiguous, counsel did not perform deficiently by advising Jones to enter into the agreement. In addition, as noted, the agreement did not require the Government to refrain from concurring in the career-offender enhancement or to argue for a sentence at the bottom of the Guidelines range. Therefore, counsel could not have been deficient in failing to object to breaches that never occurred.

And even is counsel performed deficiently, thus leading Petitioner to believe that the Government would not argue for a within-Guidelines sentence and that his prior convictions and criminal history would not be used to "enhance" his sentence, there was, for two reasons, no resulting prejudice. First, at the change-of-plea hearing the Court cured any misunderstanding Petitioner may have had regarding the plea agreement and the process that would be undertaken to calculate his Guidelines range and arrive at an appropriate sentence:

> THE COURT: Now when we say, Mr. Jones, when we say the maximum penalty, that means the most that you can receive. That doesn't mean that's the sentence you're going to receive in the case.

14

Usually the attorneys will discuss with their clients what we call the sentencing guidelines.

Do you recall -- don't tell me anything Ms. Wimbley told you, but do you recall her talking to you about the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: And under the sentencing guidelines we usually have what we call the low end of the range and then the upper end of the range.

So what is going to happen, if you plead guilty, and I accept your guilty plea, then we'll come back to court in about three months. Between now and then you will meet with a probation officer.

They will prepare what is called a presentence report that will contain information about you and your background, you family, your education, your work, your criminal history, and anything else that might be important for the attorneys and the Court to know when trying to decide what is an appropriate sentence in your case.

Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: We'll come back to court. Mr. Powell or someone from the U.S. Attorney's Office will argue as far as what they believe is an appropriate sentence in your case. Ms. Wimbley will argue on your behalf. You will be allowed to make any statements that you would like to make.

And then I will consider the information in the presentence report. I'll consider the sentencing guidelines. I'll consider the arguments made here in court.

And then finally I'll consider what we call the 3553 factors. Which that's just a list of items that I'm required to consider in each case in deciding what is an appropriate sentence.

And then I'll decide what I think is appropriate in your case. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about anything I've gone over with you up to this point?

        THE DEFENDANT: No, sir.

(No. 1:17-cr-10068-STA-1, ECF No. 53 at 15-16.)  After the prosecutor read the plea agreement in open court, the Defendant was asked if he was "satisfied [and] believe[d] that [he] understood everything that's in the plea agreement and that [he] did so before signing it?" (*Id.*, ECF No. 53 at 17.)  He replied "Yes, sir." (*Id.*, ECF No. 53 at 17.)

        Second, Petitioner received a sentence below the advisory Guidelines range.  Therefore, even if counsel should have objected to the Government's request for a within-Guidelines sentence, no harm resulted from her failure to do so.

        The record therefore belies Petitioner's claim that counsel rendered ineffective assistance at the plea stage.  Claim 4B is without merit and is **DENIED**.

## VI.    Claim 5

        Petitioner posits that "[t]here were errors in the indictment." (ECF No. 1 at 8.)  He insists that the charging document did not contain a statement that the Government "intended to use [his] prior criminal history, or other dismissed counts or other information in which to classify [him] as a 'career offender' in which to enhance his sentence." (ECF No. 16 at 22.)  He further argues that the indictment was defective because the drug quantity was stated as "50 grams or more of actual methamphetamine," but the substance attributable to him was not pure, and so was only "70%" actual methamphetamine. (*Id.*).  He also takes issue with the document's use of the phrase "on or about" when referring to the date of the offense.  Respondent argues that the claim was waived by the guilty plea and is also without merit.

        As discussed *supra*, a valid guilty plea waives "pre-plea, non-jurisdictional claims of constitutional deprivations." *Brown v. United States*, No. 20-6206, 2021 WL 1561481, at *2 (6th

Cir. Mar. 31, 2021) (unpublished) (citing *Tollett*, 411 U.S. at 267). Jones's claim that the indictment was defective in several respects was waived by his guilty plea because "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002); *see also Brown*, 2021 WL 1561481, at *2 (citing *Cotton*, 535 U.S. at 630) (reasonable jurists would not disagree that petitioner waived his challenge to the indictment by pleading guilty); *United States v. Patrick*, No. 04-cv-2970-MA/P, ECF No. 8 at 14 (W.D. Tenn. Dec. 14, 2006)) (citing *Cotton*, 535 U.S. at 629-31) (petitioner's claim that his indictment was defective was waived by his guilty plea).

But even if the claim was not waived, it would be without merit. The fact that Count 2, the charge to which Petitioner pleaded guilty, referenced the date of the offense as "on or about September 15, 2016," does not render the indictment insufficient. *See United States v. Ferguson*, 681 F.3d 826, 831 (6th Cir. 2012) (quoting *United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir. 1989)) ("When 'on or about' language is used in an indictment, proof of the exact date of an offense is not required as long as a date reasonably near that named in the indictment is established.") In addition, Petitioner points to nothing in record to show that the methamphetamine attributable to him was not actual methamphetamine.[8] The indictment was also not defective for failing to notify him of the potential application of the advisory Guidelines' career-offender provision. *Cf. Hodge v. United States*, No. 5:08-CR-00059-BR, 2009 WL 10708543, at *1 (E.D.N.C. Dec. 3, 2009), *appeal dismissed*, 390 F. App'x 231, 232 (4th Cir. 2010)) (citing *United*

---

[8] In fact, the indictment's reference to a drug quantity of "actual methamphetamine" of "50 grams or more" precisely tracked the penalty section of the statute, *see* 21 U.S.C. § 841(b), and Petitioner stipulated in the plea agreement to an "amount of drugs . . . equat[ing] to at least 150 grams but less than 500 grams of actual methamphetamine." (No. 1:17-cr-10068-STA-1, ECF No. 33 at 2.)

17

*States v. Cheek*, 415 F.3d 349, 352 (4th Cir. 2005)) ("[P]rior state convictions which form the basis for sentencing as a career offender need not be charged in the indictment."). Lastly, as the Government correctly points out, the indictment was sufficient in all other respects. It tracked the language of the drug statute, including the knowing and intentional mental state that is required for proof of the offense. *See United States v. Coss,* 677 F.3d 278, 288 (6th Cir. 2012) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.") (citation omitted). Claim 5 is therefore without merit and is **DENIED**.

For all of these reasons, the Petition is **DENIED**. Judgment shall be entered for Respondent.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

18

debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[9]

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: March 31, 2022

---

[9] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

19